**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| Michael Reed, Jr.,<br>Petitioner<br>-vs-<br>G. Fizer, et al.,<br>Respondents. | CV-14-8214-PCT-DJH (JFM)<br><br>**Amended Report & Recommendation<br>on Petition for Writ of Habeas Corpus<br>and Order** |
| --- | --- |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on November 3, 2014 (Doc. 1).  On March 23, 2015, Respondents filed their Limited Answer (Doc. 9).  Petitioner filed a Reply and Motion for Evidentiary Hearing on April 30, 2015 (Doc. 10).

The Petitioner's Petition and Motion for Evidentiary Hearing are now ripe for consideration.  Accordingly, the undersigned makes the following order, proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. PROCEEDINGS AT TRIAL

On October 7, 2010, Petition was indicted in Coconino County Superior Court on two counts of driving under the influence, arising out of the same events on April 15, 2010.  (Exhibit A.)  (Exhibits to the Answer, Doc. 9, are referenced herein as "Exhibit ___.") The state filed allegations of historical prior felony convictions, and allegations of

aggravating factors, including a non-historical prior and other factors, but not including amenability to rehabilitation.  (Exhibit B.)

Following a jury trial, Petitioner was convicted on both counts.

The Presentence Report recommended 8 year sentences, and included an analysis that placed Petitioner at a "medium-high risk" of reoffending.  (Exhibit G, Presentence Report at 2-4.)  The Report included the following conclusion:

> The defendant, although he stated that he has a "problem" with alcohol, does not appear to consider treatment as being important. When asked if he intended to seek treatment offered through the Arizona Department of Corrections, he stated, "No. It wouldn't do me any good to do it while in prison; it won't count for anything on the outside."

(*Id.* at 5.)  At sentencing, counsel objected to the belated assertion of this aggravating factor, and argued that Petitioner had not been afforded an opportunity to participate in alcohol.  (Exhibit JJ, R.T. 6/2/11 Vol. I at 9-10.)  The trial court quoted the Presentence Report's summation of Petitioner's comments.  (*Id.* at 11.)  Defense counsel attempted to explain:

> From the very beginning, when it was clear that the state wasn't going to offer Mr. Reed any sort of plea offers in this case, I was very up-front with him that he's facing a significant amount of time in this case and that the type of prison sentence that he's going into prison for is the type where a person mandatorily gets classified as a high-risk person and goes into a high-level security prison.
>
> I've gone to those facilities. I've seen them myself and taken tours of them. These are the type of facilities where Mr. Reed's going to be in a prison cell with one other person for 23 hours a day, and then he's going to get out for one hour a day and be released with  other people who are classified as high-risk offenders, including people that have done some very violent, very dangerous things.
>
> From the very beginning I've been very clear with  Mr. Reed about what he's looking at in this case, as I am  with all of my clients, and I think Mr. Reed's statement  merely reflects the statements of a person that is being  realistic about what they're headed into.
>
> Right now Mr. Reed doesn't really have the luxury of thinking very broadly about what type of treatment is available to him going into prison in the next several years. His much more fundamental concern is that, will he be safe there, will he get through it, those sorts of things, and that's largely due to my own presentation of his circumstances to him. That's how I always am with all of my clients.

(*Id.* at 11-13.)

Armed with various letters in support of Petitioner (Exhibits D and F), a sentencing memorandum from the State (Exhibit E), and the Presentence Report (Exhibit G), the trial court sentenced Petitioner to two, concurrent sentences of 12 years, aggravating the sentence based on Petitioner's criminal history and the lack of amenability to rehabilitation. (Exhibit H, Sentence at 2.)   With regard to the latter, the Court stated: "I do find that Mr. Reed is not amenable to rehabilitation as exhibited by the numerous alcohol-related offenses and convictions in this case." (Exhibit KK, R.T. 6/2/11 Vol. II at 8.)

## B. PROCEEDINGS ON DIRECT APPEAL

On June 3, 2011, Petitioner filed his Notice of Appeal (Exhibit J).  Petitioner then filed through counsel an Opening Brief (Exhibit K) arguing violations of state law and federal Due Process under *Blakely v. Washington*, 542 U.S. 296 (2004) in sentencing. On February 14, 201, the Arizona Court of Appeals filed its Memorandum Decision (Exhibit N), affirming Petitioner's sentence.

Petitioner did not seek further review, and on March 30, 2012, the Arizona Court of Appeals issued its Mandate (Exhibit O).

## C.  PROCEEDINGS ON POST-CONVICTION RELIEF

**First PCR Proceeding** - Almost 15 months later, on August 20, 2013, Petitioner filed with the trial court a "Motion to File Successive Post-Conviction Relief" (Exhibit P), arguing that he had mailed a notice of post-conviction relief in March of 2012. Plaintiff submitted a copy of the prison's out-going mail log showing mail from Petitioner to the Coconino County Superior Court on March 21, 2012.  (Exhibit P at attached Exhibit.)

In an Order filed August 23, 2013, the trial court reported an inability to find any record of such a notice of post-conviction relief, and directed Petitioner to submit any

3

related correspondence or copies.  (Exhibit Q, Order 8/23/13.)  Several weeks later, the trial court filed a second Order indicating that the court had received a duplicate motion from Plaintiff, but which instead of having the mail log attached, it had a letter from the Coconino County Public Defender dated November 27, 2012 indicating that the time for notice of PCR had expired, and urging Petitioner to file a motion with the court "explaining what has transpired concerning your attempts to seek post-conviction relief." (Exhibit R, Order 9/10/13 at 1.)  Also attached to that motion was the original of a Notice of Post-Conviction Relief signed as of March 23, 2013, with an incomplete Affidavit of Indigency, and no fold lines (which court thought indicative it had not been mailed from ADOC).  Finally, the court expressed concern that the signatures on the various filings did not appear to be from the same person, and that it seemed unlikely that they could have been signed by Petitioner on August 19, 2013, and received by the Court the next day, suggesting that "the defendant may have someone other than himself filing his pleadings and signing for them."  (*Id.*)  The Court extended for 30 days the time for Petitioner to produce the notice of post-conviction relief purportedly filed in March, 2012. (*Id.*)

On September 25, 2013 (fifteen days after the deadline), Petitioner filed a letter (Exhibit S) addressed to the trial court judge.  Petitioner asserted that he had signed and mailed his motion himself, using a legal size manila envelope.  He asserted he had followed the rules in submitting his PCR notice, and the clerk's office lost it.  Petitioner again attached the mail log, as well as receipts purporting to show copying and notarization fees for a notice of post-conviction relief on March 20, 2012.  He did not, however provide the notice.

On October 15, 2013, the trial court noted receipt of Petitioner's letter, the lack of an explanation for the copy showing a March 23, 2013 date and the purpose of the public defender's correspondence in November, 2012, and Petitioner's failure to act thereafter. The trial court thus found that "defendant's notice of post-conviction relief was not filed."

The trial court also found that the notice dated March 23, 2013 was untimely. Consequently, that notice was summarily dismissed.  (Exhibit T, Order 10/15/13.)

Petitioner then filed a Petition for Review with the Arizona Court of Appeals, which that Court construed as a petition for special action.   The court summarily declined to accept jurisdiction over the petition on November 4, 2013.  (Exhibit V, Order 11/4/13.)

**Second Proceeding** – Some four months later, on February 10, 2014, Petitioner filed a Motion for Delayed PCR (Exhibit W).  The parties reference no disposition of that motion.

**Third Proceeding** - Almost five months later, on July 9, 2014, Petitioner file a "Writ of Error of Coram Nobis" (Exhibit X) arguing that the trial judge had engaged in misconduct in the rejection of the earlier PCR proceeding.

In an Order filed July 14, 2014, the trial court, deeming the writ of coram nobis governed by Rule 32 concerning post-conviction relief petitions, denied a transfer of judge, and found that Petitioner was asserting arguments resolved in his direct appeal. Accordingly, the "Writ of Error" was denied.  (Exhibit Y, Order 7/14/14.)

Petitioner then filed a Motion for Reconsideration (Exhibit Z).  On August 11, 2014, the trial court denied the motion for reconsideration, finding no misconduct and that, in light of the Arizona Court of Appeals' refusal to accept jurisdiction in the earlier matter, the order of October 15, 2013 stood, including the determination that his earlier efforts were untimely.

## D.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on November 3, 2014 (Doc. 1).  The Petition indicates that it was signed on October 28, 2014, but contains no representations about the time or manner of delivery or mailing. The envelope in which it arrived indicates it was sent by the Arizona Department of Corrections, and is postmarked

5

1  October 31, 2014.

2     As summarized in the Court's service Order, Petitioner's Petition asserts the

3  following four grounds for relief:

> In **Ground One**, Petitioner alleges that his Fifth, Eighth, and
> Fourteenth Amendment rights were violated when the trial court
> "blocked/lost/refused to file" his notice of post-conviction relief. In
> **Ground Two**, Petitioner alleges that his sentence was unlawfully
> aggravated, in violation of his First, Fifth, Eighth, Ninth, and
> Fourteenth Amendments. He argues in **Ground Three** that he was
> denied due process when the trial court refused to allow a delayed
> request for postconviction relief pursuant to Rule 60(c) and when
> his request for a new judge was denied by the presiding judge of the
> Superior Court. In **Ground Four**, Petitioner asserts that his due
> process rights were violated when the trial court denied his writ of
> coram nobis.

(Order 2/6/15, Doc. 6 at 1-2 (emphasis added).)

**Response** - On March 23, 2015, Respondents filed their Limited Answer (Doc. 9).  Respondents argue that the petition is untimely, the claims are procedurally defaulted, and the claims are not cognizable on habeas review.

**Reply** - On April 30, 2015, Petitioner filed a Reply and Motion for Evidentiary Hearing (Doc. 10).  Petitioner argues he is entitled to application of the prison mailbox rule to his lost PCR notice sent March 21, 2012.  He argues that he first saw his presentence report on May 2, 2014.   He also argues the merits of his claims.  Finally, he requests an "Evidentiary Hearing on the issues so sited [sic] in the writ of habeas corpus."  (*Id.* at 4.)  He attaches documents related to his March, 2012 mailing to the trial court, his own affidavit, various records from the state court proceedings, and Arizona Rule of Criminal Procedure 32.1.

### III. APPLICATION OF LAW TO FACTS

**A.  TIMELINESS**

**1.  One Year Limitations Period**

Respondents assert that Petitioner's Petition is untimely.  As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-

6

year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts.   28 U.S.C. § 2244(d).  Petitions filed beyond the one year limitations period are barred and must be dismissed.  *Id.*

## 2. Commencement of Limitations Period

**Conviction Final** - The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[1]

Here, Petitioner's direct appeal remained pending through February 14, 2012, when the Arizona Court of Appeals denied his direct appeal.[2]  (Exhibit N.)  Thereafter, Petitioner had 30 days to seek review by the Arizona Supreme Court.  Ariz. R. Crim. P. 31.19(a).  Arizona applies Arizona Rule of Criminal Procedure 1.3 to extend "the time to file an appeal by five days when the order appealed from has been mailed to the interested party and commences to run on the date the clerk mails the order."  *State v. Zuniga*, 163 Ariz. 105, 106, 786 P.2d 956, 957 (1990).  Thus, Petitioner had through Tuesday, March 20, 2012 to seek review by the Arizona Supreme Court.[3]  He did not do

---

[1]  Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims.  *See* 28 U.S.C. § 2244(d)(1)(B)-(D).  Except as discussed hereinafter, Petitioner proffers no argument that any of these apply.

[2]  The Arizona Court of Appeals did not issue its mandate until March 30, 2013.  (Exhibit O).  However, for purposes of 28 U.S.C. § 2244(d)(1)(A) ("conclusion of direct review"), the issuance of an Arizona mandate is irrelevant.  *Hemmerle v. Schriro*, 495 F.3d 1069 (2007).

[3]  For purposes of 28 U.S.C. § 2244, "direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *See Bowen v. Roe*, 188 F.3d 1157, 1158 (9th Cir.1999).  However, certiorari review with the U.S. Supreme Court may only be sought following a decision or denial of discretionary review by the state court of last resort, *i.e.* the Arizona Supreme Court. *Flynt vs. Ohio*, 451 U.S. 619 (1981).  Accordingly, the time for seeking a writ of certiorari with the U.S. Supreme Court cannot be considered in determining when Petitioner's judgment became final

so, and accordingly his conviction became final by conclusion of direct review on that date.

**Newly Discovered Factual Predicate** – Petitioner argues in his Reply that he did not see his presentence report until May 2, 2104.  (Reply, Doc. 10 at 4.  *See also id.* at Exhibit B, Affidavit 10/28/14.)  Petitioner argues that this report shows that the report writer failed to include all of the comments made to her by Petitioner, and yet the trial judge relied upon this incomplete report to sentence Petitioner.  However, in his Petition, Petitioner asserts "Petitioner never saw the report until 2/2014."  (Petition, Doc. 1 at 7.)

Although the conclusion of direct review normally marks the beginning of the statutory one year, section 2244(d)(1)(D) does provide an alternative of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  Thus, where despite the exercise of due diligence a petitioner was unable to discover the factual predicate of his claim, the statute does not commence running on that claim until the earlier of such discovery or the elimination of the disability which prevented discovery.

The commencement is not delayed until actual discovery, but only until the date on which it "could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).    "Although section 2244(d)(1)(D)'s due diligence requirement is an objective standard, a court also considers the petitioner's particular circumstances."  *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012).  Thus the court should consider such things as a petitioner's physical confinement and the limits of his imprisonment.  "Just as the petitioner's particular circumstances may include impediments to discovering the factual predicate of a claim, they may also include any unique resources at the petitioner's disposal to discover his or her claim."  *Id.* at 1236.  For example, the court may consider such things as familial assistance and other legal assistance.

Similarly, information available to a habeas petitioners' attorneys is relevant to

---

when review by the Arizona Supreme Court resort was not sought.  *Eisermann vs. Penarosa*, 33 F. Supp. 2d 1269 (D. Hawaii 1999).

the determination whether knowledge is chargeable to a petitioner.  "Under ordinary circumstances-and there is no room for the application of a different principle here-a lawyer's knowledge is attributed to her client." *Wood v. Spencer*, 487 F.3d 1, 4-5 (1st Cir. 2007), cert. denied, 128 S. Ct. 260 (2007). *See also Ford v. Galaza*, 683 F.3d 1230, 1236 (9th Cir. 2012) (citing *Wood*, 487 F.3d at 4-5, but not relying on attribution of attorney's knowledge to petitioner).  On the other hand, where the factual predicate concerns such things as counsel's conflict of interest or failure to file a notice of appeal, which counsel could be presumed to conceal from his client, the knowledge of counsel may not be attributable to the petitioner.  *See e.g. Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (counsel's failure to file notice of appeal).

Here (assuming Petitioner did not see his presentence report until May 2, 2014), the record reflects that the presentence report and its contents were known to trial counsel and were discussed in open court.  Both the trial court and the prosecutor quoted the relevant portion of the Presentence Report.  (Exhibit JJ, R.T. 6/2/11, Vol. I at 11; Exhibit KK, R.T. 6/1/11 Vol. II at 3.)  Thus, the knowledge of that report is chargeable to Petitioner's counsel, and thus to Petitioner, and directly to Petitioner given his presence at sentencing.

Moreover, section 2244(d)(1)(D) relates to the discovery of "the factual predicate of the claim." To the extent that a petitioner refers to recently discovered evidence, such evidence may not be the "factual predicate" of his claims, but rather only the evidence of those facts.  *See Flanagan v. Johnson*, 154 F.3d 196, 198-99 (5th Cir.1998) (receipt of trial counsel's affidavit irrelevant where knowledge of facts supporting claim ineffectiveness previously known to defendant).  Courts have attempted to distinguish between supporting evidence and a factual predicate by referring to the latter as the "vital facts." *See e.g. Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012).  The Ninth Circuit has not elucidated what is meant by "vital facts," but other circuits have.

> The facts vital to a habeas claim are those without which the claim would necessarily be dismissed under Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts

1
2
3

> (requiring a district judge to dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief") or Rule 12(b)(6) of the Federal Rules of Civil Procedure (allowing for dismissal of a civil complaint where the plaintiff has "fail[ed] to state a claim upon which relief can be granted").

4  *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012) (applying § 2244(d)(1)(D)).

5   Petitioner makes no explanation of what factual predicate was provided by the

6  presentence report. His claim is in part that his sentence was improperly aggravated

7  based on factors found by the judge, in violation of *Blakely*.   In *Blakely v. Washington*,

8  542 U.S. 296 (June 24, 2004), the Court held that "the 'statutory maximum' for *Apprendi*

9  purposes is the maximum sentence a judge may impose solely on the basis of the facts

10  reflected in the jury verdict or admitted by the defendant." 542 U.S. at 303.    The

11  presentence report only adds the evidentiary contention that the judge had inadequate or

12  flawed evidence on which to make a finding of the aggravating factors.  That is not a

13  "vital fact" of a *Blakely* claim, which instead is based upon the requirement of the judge

14  finding the factual basis for an aggravating factor, not his means of doing so.

15   Accordingly, Petitioner fails to show that his recent receipt of his presentence

16  report justifies a delay in commencement of the limitations period.

17   **Attacks on Recent Proceedings** – Plaintiff's claims in Grounds 1, 3, and 4 all

18  arise out of complaints over the handling of his claims in his PCR proceedings.

19   In **Ground One**, Petitioner alleges that his rights were violated when the trial

20  court "blocked/lost/refused to file" his notice of post-conviction relief.  That did not

21  occur until October 15, 2013.  (Exhibit T, Order 10/15/13.)  Moreover, that did not

22  become a final act until the rejection of Petitioner's Petition for Review on November 4,

23  2013.  (Exhibit O, Order 11/4/13.)  (Petitioner's habeas petition was filed less than one

24  year later, on November 3, 2014.)  Accordingly, the factual predicate of this claim could

25  not have been discovered until after November 4, 2013.

26   In **Ground Three** Petitioner argues that he was denied due process when the trial

27  court refused to allow a delayed request for postconviction relief pursuant to Rule 60(c)

28  and when his request for a new judge as requested in his Writ of Coram Nobis (Exhibit

X) was denied.  In **Ground Four**, Petitioner asserts that his due process rights were violated when the trial court denied his writ of coram nobis.  The Order denying that filing was not filed until August 11, 2014 (Exhibit AA).  Accordingly, the factual predicate of these claims could not have been discovered until no or after August 11, 2014.

**Conclusion re Commencement** - Therefore, Petitioner's one year on his claim in Ground 2 began running on March 21, 2012, and without any tolling expired on March 20, 2013.  His one year on his claims in Ground One began running after November 4, 2013, and expired sometime after November 4, 2014.  His one year on his claims in Grounds Three and Four began running sometime after August 11, 2014, and expired sometime after August 11, 2015.

**3.  Timeliness Without Tolling**

Petitioner's Petition (Doc. 1) was filed on November 3, 2014 (Doc. 1).  The Petition indicates that it was signed on October 28, 2014, but contains no representations about the time or manner of delivery or mailing. The envelope in which it arrived indicates it was sent by the Arizona Department of Corrections, and is postmarked October 31, 2014.

"In determining when a pro se state or federal petition is filed, the 'mailbox' rule applies. A petition is considered to be filed on the date a prisoner hands the petition to prison officials for mailing."  *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010). Because it appears that Petitioner did deliver his petition to prison officials for mailing, and it is reasonable to assume that it may have been done prior to the mailing date, and because it does not affect the outcome, the undersigned presumes (in Petitioner's favor) that his Petition was delivered to prison officials for mailing on the date it was signed, and that it should be deemed "filed" as of that date.

As determined in subsection (2) above, without any tolling Petitioner's one year habeas limitations period on Ground 2 expired no later than March 20, 2013, making his

11

October 28, 2014 Petition over 19 months delinquent.

However, as determined in subsection (2) above, his limitations period on the claims in Grounds 1, 3 and 4 did not expire until November 4, 2014 or later, making his Petition timely with respect to these claims.

**4. Statutory Tolling**

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  This provision only applies to state proceedings, not to federal proceedings.  *Duncan v. Walker*, 533 U.S. 167 (2001).

**Properly Filed** - Statutory tolling of the habeas limitations period only results from state applications that are "properly filed," and an untimely application is never "properly filed" within the meaning of § 2244(d)(2).  *Pace v. DiGuglielmo*, 544 U.S. 408 (2005).

Even if the state court provides alternative grounds for disposing of the state application, a ruling that the application was untimely precludes it from being "properly filed" and tolling the limitations period.  *Carey v. Saffold*, 536 U.S. 214, 225-26 (2002). If the state court summarily disposes of a state application without identifying if it was on timeliness grounds, or otherwise fails to give a clear indication whether it has deemed the application timely or untimely, the federal habeas court "must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness." *Evans v. Chavis*, 546 U.S. 189, 198 (2006).

**Mailbox Rule** - For purposes of calculating tolling under § 2244(d), the federal prisoner "mailbox rule" applies.  Under this rule, a prisoner's state filings are deemed "filed" (and tolling thus commenced) when they are delivered to prison officials for mailing.  In *Anthony v. Cambra*, 236 F.3d 568 (9th Cir. 2000), the Ninth Circuit noted:

> [I]n *Saffold v. Newland*, 224 F.3d 1087 (9th Cir.2000), we squarely held that the mailbox rule applies with equal force to the filing of state as well as federal petitions, because "[a]t both times, the

> conditions that led to the adoption of the mailbox rule are present; the prisoner is powerless and unable to control the time of delivery of documents to the court." *Id.* at 1091.

*Id.* at 575.

Similarly, the "mailbox rule" applies to determining whether an Arizona prisoner's state filings were timely.  Although a state may direct that the prison mailbox rule does not apply to filings in its court, *see Orpiada v. McDaniel,* 750 F.3d 1086, 1090 (9th Cir. 2014), Arizona has applied the rule to a variety of its state proceedings.  *See e.g. Mayer v. State,* 184 Ariz. 242, 245, 908 P.2d 56, 59 (App.1995) (notice of direct appeal); *State v. Rosario*, 195 Ariz. 264, 266, 987 P.2d 226, 228 (App.1999) (PCR notice); *State v. Goracke*, 210 Ariz. 20, 23, 106 P.3d 1035, 1038 (App. 2005) (petition for review to Arizona Supreme Court).

**Application to Petitioner** – As discussed above, Petitioner's limitations period on Ground Two commenced running on March 21, 2012, and expired on March 20, 2013.  Petitioner engaged in four sets of activities in state court during or after that time period: (1) his lost PCR notice; (2) his subsequent attempts to institute a PCR proceeding; (3) his Motion for Delayed PCR; and (4) his coram nobis proceeding.

<u>Lost PCR Notice</u> -   Petitioner contended to the trial court, and still contends, that he mailed a PCR notice on March 20, 2012.  The trial court ruled: "Based on the foregoing, the Court finds defendant's notice of post-conviction relief was not filed." (Exhibit T, Order 10/15/13.)

Assuming that this federal habeas court is bound by that ruling, Petitioner would not be entitled to any statutory tolling for this purported filing.

Even if this court were not bound by the ruling, the undersigned concludes that the trial court's ruling was based on a finding that the PCR notice was never mailed.  The record is undisputed that it was never received and actually filed.

It is true the trial court made no explicit finding on whether this notice had been mailed, but instead only concluded that it "was not filed."  (Exhibit T, Order 10/15/13.) Nonetheless, in light Arizona's application of the prison mailbox rule to PCR notices,

13

1    *see State v. Rosario*, 195 Ariz. 264, 266, 987 P.2d 226, 228 (App.1999), the mailing of

2  the notice would have been sufficient to establish its filing.   Indeed, the trial court

3  appeared to be seeking copies of the mailed documents to attempt to establish whether it

4  should be deemed filed, even though it was plain to the trial court that it had not been

5  received by the clerk's office, and thus filed within the traditional meaning of the word.

6  Thus, the trial court's ruling that there was no PCR notice filed must be understood as a

7  conclusion that the document had not been mailed.

8      That factual finding is entitled to a presumption of correctness.

9
10       In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

11
12  28 U.S.C. § 2254(e)(1).   "The presumption of correctness applies not only to express

13  findings of fact, but also applies equally to unarticulated findings that are necessary to

14  the state court's conclusions of mixed questions of fact and law."  *Cooper v. Brown*, 510

15  F.3d 870, 919 (9th Cir. 2007).

16      Petitioner supports his contention that he mailed the PCR notice with ADOC

17  records showing: (1) that he mailed something to the trial court on March 21, 2012

18  (Exhibit P, MFile at Exhibits); (2) a request for copying of a notice of post-conviction

19  relief on March 20, 2012, and a withdrawal for the costs of copies and notary services

20  dated March 20, 2012 (Exhibit S, LT Judge 9/25/13 at Exhibits); (3) an Inmate Letter

21  Response dated November 30, 2012, confirming that Petitioner sent legal mail out on

22  March 21, 2012, but did not receive any incoming legal mail from March 22, 2012

23  through May 11, 2012 (Exhibit U, PFR at Exhibits); (4) a statement of his inmate

24  account showing the deduction for "POSTAGE 3-20-12" on March 23, 2012 and "LGL

25  COPIES/NOTARY" on March 28, 2012 (Exhibit W, Mot. Delayed PCR at Exhibit A-2).

26  Of course, the PCR court was aware of at least the first two sets of records.   The latter

27  two records are cumulative.

28

Respondents proffer no controverting evidence.

In sum, therefore, Petitioner presented to the PCR court evidence that he had a copy of a PCR notice made on March 20, 2012, and mailed something to the trial court on March 21, 2012.  He has subsequently added the other corroborating records from the prison, as well as circumstantial records, *e.g.* correspondence from counsel advising him of the due date, etc.

What Petitioner did not do, as requested by the trial court, and still has not done, is provide a copy of the purportedly mailed PCR notice, or proffer an explanation for his failure to do so.  At best, Petitioner replied to the trial court: "As far as my notice of PCR I have followed all of the Rules of Criminal Procedure, if someone in the clerk's office lost my work that would not be my fault, and not unheard of to happen." (Exhibit S, LT Judge 9/25/13 at 1.)  Now, he argues only "I sent the only copy I had," (although it is unclear whether Petitioner is referring to his March, 2012 PCR notice, or the August 23, 2013 one that the trial court questioned because it had not been folded).  (Reply, Doc. 10 at 2.)

Thus, even if this Court might conclude that Petitioner had in fact mailed a PCR notice in March, 2012, Petitioner leaves this court without clear and convincing evidence that he did so.  Accordingly, this Court is bound by the trial court's finding, and cannot conclude that Petitioner "filed" his March, 2012 PCR notice by mailing it, and cannot find that Petitioner is entitled to statutory tolling for any time prior to his August 20, 2013 filing.

Filed PCR Notice Untimely - Petitioner's first filed PCR proceeding was purportedly commenced sometime between August 23, 2013 and September 10, 2013, when he filed the second copy of his Motion to File Successive Post-Conviction Relief with the PCR notice dated March 23, 2013.[4]  At that time, his one year had been expired

---

[4] That filing was dated just one day earlier, August 19, 2013.  Thus even if subject to a prison mailbox rule, the one day difference would not be sufficient to make Petitioner's Petition timely.

15

for some five months.   Once the statute has run, a subsequent post-conviction or collateral relief filing does not reset the running of the one year statute. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).

Even assuming that this PCR notice had been previously mailed on the date it was dated, March 23, 2013, that was three days after Petitioner's one year expired, and thus would not render Petitioner's petition timely.   Moreover, Petitioner proffers nothing to suggest that the notice had been mailed at this earlier date.   The trial court observed that the copy filed in August 2013 "was an original Notice of Post Conviction Relief allegedly signed by the defendant on *March 23, 2013*," and had been sent with the second copy of his Motion dated August 19, 2013. (Exhibit R, Order 9/10/13 at 1.)   If Petitioner still possessed the original in August, 2013, it could not have been sent earlier.

Moreover, the trial court eventually ruled that this PCR notice was untimely. (Exhibit T, Order 10/15/13.)   Whether a state petition is untimely is a question of state law.   "What we intimated in [*Carey v. Saffold*, 536 U.S. 214 (2002)] we now hold: 'When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005).

Delayed PCR and Coram Nobis Proceedings – Finally, on February 10, 2014, Petitioner filed his Motion for Delayed PCR (Exhibit W), and on July 9, 2014, his "Writ of Error of Coram Nobis" (Exhibit X).   Each of these were filed long after the expiration of his limitations period on Ground 2 expired on March 20, 2013.   Accordingly, no tolling resulted from these filings. *Jiminez*, 276 F.3d at 482.

Accordingly, Petitioner is not entitled to any statutory tolling with respect to Ground 2 of the Petition.

## 5.  Equitable Tolling

"Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's

16

control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'"  *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations omitted).  "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.' " *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002)  (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.). Petitioner bears the burden of proof on the existence of cause for equitable tolling.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

Petitioner does not proffer any grounds for equitable tolling, and the undersigned finds none.

A lost state filing might, in some situations, constitute extraordinary circumstances that could justify equitable tolling.   But even if extraordinary circumstances prevent a petitioner from filing for a time, equitable tolling will not apply if he does not continue to diligently pursue filing afterwards.  "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2nd Cir. 2000).  *But see  Lott v. Mueller*, 304 F.3d 918 (9th Cir. 2002), McKeown, J. dissenting (arguing that equitable tolling should work a stoppage of the clock, with a resulting

extension of the deadline). Ordinarily, thirty days after elimination of a roadblock should be sufficient. *See Guillory v. Roe*, 329 F.3d 1015, 1018, n.1 (9th Cir. 2003).

Here, Petitioner was aware by at least December 13, 2012 that his purported March, 2012 PCR notice had not been filed. (*See* Petition, Exhibits, Letter 12/13/12 from Coconino County Public Defender.)  It was not until almost 2 years later before he filed his Petition in this Court.  Indeed, he did not even pursue his state filings for over nine months, until August 20, 2013, when he filed his Motion to File Successive PCR (Exhibit P).  And, by November, 2013, when the Arizona Court of Appeals denied Petitioner's Petition for Review/Special Action (*see* Exhibit V, Order 11/4/13), Petitioner was aware that he would not be successful in having his March, 2012 PCR notice resurrected.  And yet he still waited another year before filing in this Court.

Perhaps Petitioner might argue that he was attempting to exhaust his state remedies.  In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the Supreme Court analyzed the potential catch-22 between the habeas limitations period and the exhaustion requirement, where a state petitioner has filed a state post-conviction relief proceeding which may ultimately be deemed untimely, thus not properly filed, and resulting in the expiration of his habeas limitations period.  "A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Id.* at 416.  Petitioner proffers no reason why this avenue was not available to him.

Accordingly, the undersigned finds no basis for equitable tolling.

**6.  Actual Innocence**

To avoid a miscarriage of justice, the habeas statute of limitations in 28 U.S.C. § 2244(d)(1) does not preclude "a court from entertaining an untimely first federal habeas petition raising a convincing claim of actual innocence." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935 (2013).  To invoke this exception to the statute of limitations, a

petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  This exception, referred to as the "*Schlup* gateway," applies "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.' " *Id.*  at 1936 (quoting *Schlup,* 513 U.S. at 316).

Petitioner makes no such claim of actual innocence in this proceeding.

**7.  Summary re Statute of Limitations**

Petitioner's October 28, 2014 Petition was filed less than one year after the discovery of the factual predicates of Petitioner's claims in Grounds 1, 3, and 4.  Thus, the petition is timely with regard to these claims.

With regard to Ground 2, taking into account the available statutory tolling, Petitioner's one year habeas limitations period commenced running on March 21, 2012, and without any tolling expired on March 20, 2013, making his October 28, 2014 Petition over 17 months delinquent.  Petitioner has shown no basis for additional statutory tolling, and no basis for equitable tolling or actual innocence to avoid the effects of his delay.  Consequently, Ground 2 of the Petition must be dismissed with prejudice as untimely.

**B.  EXHAUSTION OF STATE REMEDIES**

Respondents argue that all of Petitioner's claims are procedurally defaulted, and thus are barred from federal habeas review.

**1. Exhaustion Requirement**

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3

19

(1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

"A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

**Proper Forum** - "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

**Proper Vehicle** -  Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

Attempts to present a claim to the Arizona Court of Appeals by other avenues will not result in fair presentation, and absent actual consideration of the claims, will not result in exhaustion.  "Submitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation."   *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

**Proper Briefing** - "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document)

1   that does not alert it to the presence of a federal claim in order to find material, such as a

2   lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

3   The Arizona habeas petitioner "must have presented his federal, constitutional issue

4   before the Arizona Court of Appeals within the four corners of his appellate briefing."

5   *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005). *But see Insyxiengmay v.*

6   *Morgan*, 403 F.3d 657, 668-669 (9th Cir. 2005) (arguments set out in appendix attached

7   to petition and incorporated by reference were fairly presented).

8       **Factual Basis** – A petition must have fairly presented the operative facts of his

9   federal claim to the state courts as part of the same claim.  A petitioner may not broaden

10  the scope of a constitutional claim in the federal courts by asserting additional operative

11  facts that have not yet been fairly presented to the state courts.  Expanded claims not

12  presented in the highest state court are not considered in a federal habeas petition.

13  *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995); *see also, Pappageorge v. Sumner*, 688

14  F.2d 1294 (9th Cir. 1982), cert. denied, 459 U.S. 1219 (1983).  And, while new factual

15  allegations do not ordinarily render a claim unexhausted, a petitioner may not

16  "fundamentally alter the legal claim already considered by the state courts." *Vasquez v.*

17  *Hillery*, 474 U.S. 254, 260 (1986). *See also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th

18  Cir.1994).

19      **Legal Basis** - Failure to so alert the state court to the constitutional nature of the

20  claim will amount to failure to exhaust state remedies.  *Duncan v. Henry*, 513 U.S. 364,

21  366 (1995).   While the petitioner need not recite "book and verse on the federal

22  constitution," *Picard v. Connor,* 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v.*

23  *Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary

24  to support the federal claim were before the state courts or that a "somewhat similar state

25  law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*).  "[T]he

26  petitioner must make the federal basis of the claim explicit either by specifying particular

27  provisions of the federal Constitution or statutes, or by citing to federal case law,"

28  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005), or by "a citation to a state

case analyzing [the] federal constitutional issue."  *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).  But a drive-by-citation of a state case applying federal and state law is not sufficient.

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, as here, the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented

*Casey v. Moore*, 386 F.3d 896, 912 n. 13  (9th Cir. 2004).

## 2.  Procedural Default

Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4.  (Answer, Doc. 9  at 20.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal.  Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** – Under Arizona's preclusion, waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Preclusion Bar – Under the rules applicable to Arizona's post-conviction process,

a claim may not be brought in a petition for post-conviction relief if the claim was "[f]inally adjudicated on the merits on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(2).

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."  Ariz.R.Crim.P. 32.2(a)(3).   Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments).

For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right."  Id.  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).  Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.

Here, none of Petitioner's claims are of the sort requiring a personal waiver.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars.  Arizona's Rule 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later

Exceptions - Rules 32.2 and  32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).  See Ariz. R. Crim. P.  32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P.  32.4(a) (exceptions to

timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable to his claims.   Nor does it appears that such exceptions would apply.  The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence.  Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application.  Here, Petitioner has long ago asserted the facts underlying his claims. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief.  Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding.  Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars

24

1  would prevent Petitioner from returning to state court. Thus, Petitioner's claims that

2  were not fairly presented are all now procedurally defaulted.

3

4  **3. Exhaustion of Petitioner's Claims**

5      Here, Petitioner's two forays to the Arizona Court of Appeals were in his direct

6  appeal and in his Petition for Review/Special Action (Exhibit U).

7      **Ground Two** - In his Ground Two, Petitioner argues: (1) that *Blakely* was

8  violated when the judge, not the jury, found his lack of amenability to rehabilitation,

9  resulting in a sentence in excess of what was authorized based on the jury's guilt

10 determination; and (2) that he was denied due process because the judge's finding on

11 rehabilitation was made without sufficient evidence, and there was no notice of this

12 aggravating factor until after conviction.  (Petition, Doc. 1 at 6.)

13     In his direct appeal, Petitioner cited *Apprendi* and *Blakely*, but did so only to lay

14 the background for the succeeding amendments to Arizona's sentencing statutes.

15 Petitioner did not, however, argue that that the trial court improperly acted as trier of

16 fact, in violation of *Blakely*.  Rather, Petitioner simply argued that the he had not been

17 afforded adequate notice and opportunity to defend against the use of a lack of

18 amenability to rehabilitation, and that the decision was not supported by sufficient

19 evidence.  Petitioner did not cite any federal authority other than *Apprendi* and *Blakely*

20 but did assert that his claim of a violation of Due Process was founded in part upon "U.S.

21 Const. Amendments 5 & 14.".  (Exhibit K, Opening Brief at 8, n. 1.) In his Reply brief,

22 Petitioner expounded upon his reliance on *Blakely* as an assertion that the aggravating

23 factors had to be alleged to the jury, but did not argue that they had to be found by the

24 jury.  (Exhibit M, Reply at 1-3.)

25     Thus, Petitioner fairly presented his second argument, the due process claim,

26 based on the lack of notice and insufficient evidence.  He did not, however, fairly present

27 his traditional *Blakely* claim.

28     Nonetheless, in addressing the matter, the Arizona Court of Appeals applied

*Blakely* and it's right to jury determination principles, and concluded that because only one aggravating factor was required to justify the aggravated sentence, the trial court's reliance on the prior conviction (which is accepted from *Blakely's* jury requirement) was sufficient, and thus the judge could determine the other aggravating factor. (Exhibit N at 7-9.)  The actual determination of a federal claim, even if not otherwise fairly presented, is sufficient to exhaust Petitioner's state remedies.  *See Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of exhaustion than a state court's actual consideration of the relevant constitutional issue"); *see also Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir.1990) (state court's *sua sponte* consideration of an issue satisfies exhaustion).

Accordingly, Petitioner has exhausted his state remedies with regard to Ground 2.

**Grounds 1, 3, and 4 – Due Process in PCR** – In his Grounds 1, 3 and 4, Petitioner asserts various errors in his PCR proceedings which amounted to a denial of due process.  The Arizona Court of Appeals construed Petitioner's Petition for Review (Exhibit U) in his PCR proceeding as a petition for special action, rather than a petition for review.  Indeed, in that petition, Petitioner did not seek review of the trial court's decision or his claims regarding his conviction or sentence, but instead an order mandating the filing of his new petition.  (*See* Exhibit V, Order 11/4/13; and Exhibit U, Petition for Review.)  A special action proceeding is not a proper vehicle to fairly present a federal claim.  *See Roettgen*, 33 F.3d at 38.

Moreover, Petitioner raised no federal claims in that Petition.  Accordingly, Petitioner has not fairly presented any federal claims to the Arizona Court of Appeals regarding his PCR proceedings.  Further, that court simply issued a summary denial of review.  Accordingly, Petitioner fails to show that the state courtactually considered any of his claims in Grounds 1, 3 and 4.

**Summary re Exhaustion** - Based upon the foregoing, the undersigned concludes that Petitioner has properly exhausted his state remedies with regard to Ground Two, but has failed to fairly present his claims in Grounds One, Three and Four to the Arizona

Court of Appeals, and for the reasons discussed hereinabove, those remedies are no longer available to Petitioner, and he has procedurally defaulted on these claims.

## 5.  Cause and Prejudice

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default.  *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).  The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner makes no assertion of cause and prejudice to excuse his procedural defaults.

To the extent that Petitioner would point to his lost PCR notice, Petitioner provides nothing to show that such notice would have presented the claims he now raises.  Indeed, as discussed hereinafter, most of the claims raised herein arose after that purported filing.

To the extent that Petitioner would point to his recent review of his Presentence Report, just as with the statute of limitations, the knowledge (and failings) of counsel is attributable to Petitioner.  Petitioner proffers nothing to suggest that the Presentence Report was not "reasonably available to counsel." *Murray, supra*.  While Petitioner

27

could escape the negligence of his counsel by showing that he was denied effective assistance of counsel,  "[t]o constitute cause for procedural default of a federal habeas claim, the constitutional claim of ineffective assistance of counsel must first have been presented to the state courts as an independent claim." *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003).  Petitioner proffers nothing to show that he has properly exhausted his state remedies on a claim of ineffective assistance of counsel.

**Summary re Cause and Prejudice** – Based upon the foregoing, the undersigned concludes that Petitioner has failed to establish cause to excuse his procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

**6.  Actual Innocence as Cause**

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice."  *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).  Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence.  *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.).  The Ninth Circuit has expressly limited it to claims of actual innocence.  *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

A petitioner asserting his actual innocence of the underlying crime must show "it

28

is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A showing that a reasonable doubt exists in the light of the new evidence is not sufficient. Rather, the petitioner must show that no reasonable juror would have found the defendant guilty. *Id.* at 329.

Petitioner makes no assertion or showing that no reasonable juror would have found him guilty. Accordingly his procedurally defaulted claims must be dismissed with prejudice.

## C. MERITS OF GROUNDS ONE, THREE AND FOUR

"In **Ground One**, Petitioner alleges that his Fifth, Eighth, and Fourteenth Amendment rights were violated when the trial court "blocked/lost/refused to file" his notice of post-conviction relief…He argues in **Ground Three** that he was denied due process when the trial court refused to allow a delayed request for postconviction relief pursuant to Rule 60(c) and when his request for a new judge was denied by the presiding judge of the Superior Court. In **Ground Four**, Petitioner asserts that his due process rights were violated when the trial court denied his writ of coram nobis." (Order 2/6/15, Doc. 6 at 1-2 (emphasis added).) Each of these grounds rests on an assertion that failings in the post-conviction relief proceedings amounted to a denial of due process.

The Ninth Circuit does not countenance such claims. "We join the majority and affirm the district court's holding that a petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings." *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989).

Moreover, as a general matter, Petitioner does nothing more than argue errors under state law. A state prisoner is entitled to habeas relief under 28 U.S.C. § 2254 only if he is held in custody in violation of the Constitution, laws or treaties of the United States. Federal habeas relief is not available for alleged errors in the interpretation or application of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Middleton v. Cupp*, 768

F.2d 1083 (9th Cir. 1985), *cert. denied*, 478 U.S. 1021 (1986).   It has long been understood that a state may violate its own law without violating the United States Constitution.  *Gryger v. Burke*, 334 U.S. 728, 731 (1948).

> We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.

*Id.*, 334 U.S. at 731.

Further, violations of state law, without more, do not deprive a petitioner of due process.  *Cooks v. Spalding*, 660 F.2d 738, 739 (9th Cir. 1981), *cert. denied*, 455 U.S. 1026, 102 S.Ct. 1729 (1982).   To qualify for federal habeas relief, an error of state law must be "sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment." *See Pully v. Harris*, 465 U.S. 37, 41 (1984).     To sustain such a due process claim founded on state law error, Petitioner must show that the state court "error" was "so arbitrary and fundamentally unfair that it violated federal due process."  *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (quoting *Reiger v. Christensen*, 789 F.2d 1425, 1430 (9th Cir.1986)).   To receive review of what otherwise amounts to nothing more than an error of state law, a petitioner must argue "not that it is wrong, but that it is so wrong, so surprising, that the error violates principles of due process"; that a state court's decision was "such a gross abuse of discretion" that it was unconstitutional.  *Brooks v. Zimmerman*, 712 F.Supp. 496, 498 (W.D.Pa.1989).   Petitioner proffers nothing to show the types of egregious errors that would amount to a denial of due process.

Accordingly, even if not procedurally defaulted, the claims in Grounds 1, 3 and 4 are without merit.

**D. MERITS OF GROUND TWO**

In **Ground Two**, Petitioner argues: (1) that *Blakely* was violated when the judge, not the jury, found his lack of amenability to rehabilitation, resulting in a sentence in

1  excess of what was authorized based on the jury's guilt determination; and (2) that he

2  was denied due process because the judge's finding on rehabilitation was made without

3  sufficient evidence, and there was no notice of this aggravating factor until after

4  conviction.  (Petition, Doc. 1 at 6.)

5  Respondents contend that not only is the claim untimely and procedurally

6  defaulted, but that it raises a question of state law.

7  **State Law Violations -** To the extent that Petitioner simply argues that the trial

8  court improperly relied upon the Presentence Report, Respondents are correct.  As noted

9  hereinabove, errors of state law do not justify habeas relief.  *Cooks*, *supra,* 660 F.2d at

10 739.

11 **Traditional *Blakely* Claim -** To the extent that Petitioner asserts that under

12 *Blakely*, the trial court was not authorized to impose his aggravated sentence unless the

13 aggravating circumstances had been found by the jury, Petitioner makes out a federal

14 claim.  That claim, however, is without merit.

15 Here, the trial court aggravated Petitioner's sentence on the basis of Petitioner's

16 conviction "of one prior felony conviction not used for sentencing enhancement

17 purposes," and the lack of amenability to rehabilitation (Exhibit KK, R.T. 6/2/11 at 8.)

18 *Blakely* was based upon the premise, expressed in  *Apprendi v. New Jersey*, 530

19 U.S. 466, 490 (2000), that "[o]ther than the fact of a prior conviction, any fact that

20 increases the penalty for a crime beyond the prescribed statutory maximum must be

21 submitted to a jury, and proved beyond a reasonable doubt."   "In *Blakely,* the Supreme

22 Court explicitly preserved its prior holding…that a sentencing enhancement based on a

23 defendant's prior conviction does not have to be presented to a jury:" *United States v.*

24 *Quintana-Quintana*, 383 F.3d 1052, 1053 (9th Cir. 2004).

25 Thus, the trial court could properly make the factual finding on the prior

26 conviction.

27 Even though the trial court went on to find the other aggravating factor on

28 rehabilitation, in Arizona, the aggravated sentence becomes authorized upon the finding

31

of a single aggravating factor, and the trial court is authorized to consider additional aggravating factors, without a jury finding, in exercising that authority. *See Van Norman v. Schriro,* 616 F. Supp. 2d 939, 944 (D. Ariz. 2007). *See also* Ariz. Rev. Stat. § 13-701(F) ("If the trier of fact finds at least one aggravating circumstance, the trial court may find by a preponderance of the evidence additional aggravating circumstances.").

Accordingly, the portion of Ground Two arising under *Blakely* is without merit.

**Due Process Claim** – Finally, Petitioner argues that: (1) the lack of earlier notice of the rehabilitation allegation or (2) supporting evidence on the rehabilitation issue amounted to a denial of due process.

Lack of Notice - The Arizona Court of Appeals rejected the notice argument, finding "no error, constitutional or otherwise, in the court's reliance on an aggravating factor that the State first alleged the day before sentencing." (Exhibit N, Mem. Dec. 2/14/12 at 5.) The court reasoned:

> Because Reed received notice of the additional aggravating factor the day before sentencing in the State's presentencing memorandum, we conclude that any due process requirement of advance notice was satisfied. Moreover, Reed did not ask for a continuance and only mentioned the lack of prior notice briefly. Rather, he mounted a vigorous defense to use of this aggravating factor that he was not amenable to rehabilitation, a factor that relied in part on a previously alleged similar criminal history, and in part on his statements to the presentence report writer rejecting treatment. Reed simply was unable to persuade the court that this aggravating factor was unsupported, and that the court should not rely on it in sentencing Reed. On this record, we find that Reed had adequate time to prepare a rebuttal, and the lack of earlier notice of this aggravating factor did not violate his due process rights.

(Exhibit N, Mem. Dec. 2/14/12 at 10.)

In *Ortiz v. Stewart*, 149 F.3d 923 (9th Cir. 1998), the Ninth Circuit rejected a due process challenge to delayed notice of aggravating factors, finding that "thirteen days gave Ortiz an 'effective opportunity to defend'." *Id.* at 939 (citing *Goldberg v. Kelly*, 397 U.S. 254, 268 (1970)). *See Goldberg, supra* (explaining that due process requires adequate notice so as to provide "an effective opportunity to defend by confronting any adverse witnesses and by presenting ... arguments and evidence orally").

Here, of course, Petitioner had far less than the 13 days referenced in *Ortiz*. But Petitioner proffers nothing to suggest that the Arizona Court of Appeals wrongly concluded that he was not prejudiced by the short time allowed. Effectively, the Arizona court concluded that despite the limited time, Petitioner had "an 'effective opportunity to defend.'" *Ortiz*, *supra*. Petitioner makes no suggestion that with additional time he would have been able to overcome the allegation. At best, he claims that the presentence report was incomplete in its recounting of his statements. But that additional information was available to Petitioner and known by his counsel.

While the purpose of a federal habeas proceeding is to search for violations of federal law, in the context of a prisoner "in custody pursuant to the judgment a State court," 28 U.S.C. § 2254(d) and (e), not every error justifies relief. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam). To justify habeas relief, a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted. 28 U.S.C. §2254(d)(1). Petitioner makes no showing that the Arizona Court of Appeals' decision that the limited notice he received was adequate was contrary to an unreasonable application of Supreme Court law.

Further, Petitioner points to no Supreme Court authority requiring any prior notice of aggravating factors which are not subject to jury determination under *Blakely*. The undersigned has located none. It is telling that the only authority relied upon by the Ninth Circuit in *Ortiz* was a civil suit, *Goldberg*, 397 U.S. 254, challenging a denial of welfare benefits.

Nor does he point to any authority extending the requirement of prior notice of aggravating factors outside the capital sentence context. *Ortiz* involved a capital sentence, and the courts have generally treated capital sentencing cases far differently from non-death penalty cases. Even if *Ortiz* could or should be extended, Petitioner

33

points to no Supreme Court authority doing so, and the undersigned has found none.

Federal courts are also authorized to grant habeas relief in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). But Petitioner proffers nothing to counter the factual determinations by the Arizona Court of Appeals.

Thus, this portion of Ground Two is without merit.

Insufficient Evidence – Finally, Petitioner contends that the trial court's factual finding on rehabilitation was not supported by the evidence. But, again, the only factual dispute he asserts is the purported discrepancy in the presentence report regarding his explanation of his comments concerning alcohol treatment. The report concluded: "When asked if he intended to seek treatment offered through the Arizona Department of Corrections, he stated, 'No. It wouldn't do me any good to do it while in prison; it won't count for anything on the outside.'" (Exhibit G, Presentence Report at 5.) Petitioner contends that his complete statements to the report writer explained regarding treatment:

> "No, not in prison as where I am I am not allowed access to treatment on a S.O. yard. Therefore it will do me no good and not count for anything. Yet I am charged for this program, but not allowed to go too. I am in a facility that has only AA to use. If I was at a facility that has a program I would utilize this but ADOC does not allow due to charges."

(Petition, Doc. 1 at 6A-6B.) The trial court found:

> A day before sentencing, the State filed a sentencing memorandum in which it alleged a fifth aggravating factor: that Reed "is not amenable to rehabilitation." In support of· this allegation, the State cited Reed's "repetitive behavior of drinking and driving," and the presentence report writer's statements that Reed conceded he has a "problem" with alcohol, but that "[he] does not appear to consider treatment as being important," and he does not intend to seek treatment offered through the Department of Corrections because "[i]t wouldn't do me any good to do it while in prison; it won't count for anything on the outside." The State argued

34

that Reed's "actions and statements show that he is not amenable to treatment, doesn't really see that he has a problem, does not take responsibility for his actions, and would only do treatment if it counted for something on the outside." Reed argued at sentencing that the trial court should not use this factor to aggravate his sentence because of the absence of prior notice of the allegation, and of any direct evidence to support it.

The court noted that because it found the existence of a prior felony conviction, the law allowed it to "consider a whole range of other aggravating factors." The court found as aggravating factors the prior felony conviction for sexual abuse, and that "Mr. Reed is not amenable to rehabilitation as exhibited by the numerous alcohol related offenses and convictions in this case," not counting the two prior aggravated DUI offenses.

(Exhibit N, Mem. Dec. at 2-3.)

Petitioner's due process claim finds its roots in *Townsend v. Burke,* 334 U.S. 736 (1948), where the "prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue." *Id.* at 741. After noting that the sentencing court had relied upon prior charges which either did not involve the defendant, or on which he had been acquitted, the Court found that "[s]uch a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand." *Id.* at 741. However, the primary question in *Townsend*, a pre-*Gideon v. Wainwright* case, was whether the defendant's lack of counsel at trial was a violation of due process. The Court's focus was on whether that lack of counsel had been "aggravated by circumstances showing that it resulted in the prisoner actually being taken advantage of, or prejudiced." 334 U.S. at 739. The erroneous determination at sentencing established that aggravation. Thus *Townsend* arguably found its violation of due process not from the errors at sentencing, but from the denial of counsel.

In *U.S. v. Tucker*, 404 U.S. 443 (1972), a post-*Gideon* case, the Supreme Court built upon the groundwork of *Townsend*, and found it improper to sustain a sentence founded "at least in part upon misinformation of constitutional magnitude." *Id.* at 447. There, however, the misinformation was that the defendant's prior convictions had been constitutionally obtained, which was incorrect because he had been denied counsel in the prior prosecutions. Thus this decision was also intertwined with a right to counsel

determination.

Petitioner points to no Supreme Court decision extending this due process analysis to reliance on incorrect information other than prior convictions, or outside the context of a denial of counsel in the present or prior proceedings.  Indeed, the *Townsend* court noted that due process is not implicated by every factual error at sentencing.

> Nor do we mean that mere error in resolving a question of fact on a plea of guilty by an uncounseled defendant in a non-capital case would necessarily indicate a want of due process of law. Fair prosecutors and conscientious judges sometimes are misinformed or draw inferences from conflicting evidence with which we would not agree. But even an erroneous judgment, based on a scrupulous and diligent search for truth, may be due process of law.

*Townsend*, 334 U.S. at 741. *See also*, *Roberts v. U. S.,*  445 U.S. 552, 556 (1980) (due process challenge may be made on the basis of "misinformation of constitutional magnitude").

In sum Petitioner points to no Supreme Court authority which would find that some defect in the evidence underlying the trial court's rehabilitation determination would amount to a denial of due process.  The undersigned has found none.

This portion of Ground Two is also without merit.


**E.  SUMMARY REGARDING PETITION**

Ground Two (Sentencing) is barred by that habeas statute of limitations. Petitioner's federal claims in Grounds One, Three and Four are procedurally defaulted. Accordingly, the Petition should be dismissed with prejudice.

Alternatively, each of his grounds for relief is without merit and should be denied on their merits.


**F.  MOTION FOR EVIDENTIARY HEARING**

On April 30, 2015, Petitioner filed his Reply and incorporated a Motion for Evidentiary Hearing (Doc. 10).  He requests an "Evidentiary Hearing on the issues so sited [sic] in the writ of habeas corpus."  (*Id.* at 4.)  Petitioner does not provide any

information about the specific issues for which an evidentiary hearing is required, nor does he suggest what evidence would be adduced at such a hearing.

A bald request for an evidentiary hearing need not be granted. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). ). Where a petitioner does not proffer any evidence to be adduced at an evidentiary hearing which would prove the allegations of the petition, the habeas court need not grant a hearing. *Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th Cir. 2006) ("The failure to proffer any additional evidence defeats [petitioner's] argument that he was entitled to an additional evidentiary hearing in federal court."); *Williams v. Bagley,* 380 F.3d 932, 977 (6th Cir.2004) ("district court did not abuse its discretion in denying Williams's request, given his failure to specify ... what could be discovered through an evidentiary hearing"); *Lincecum v. Collins,* 958 F.2d 1271, 1279–80 (5th Cir.1992) (denying evidentiary hearing "[a]bsent any concrete indication of the substance of the mitigating evidence" the hearing supposedly would provide).

Moreover, there are few factual disputes in this case, and none require an evidentiary hearing for resolution.

Petitioner makes factual assertions about his discovery of the presentence report. But, as discussed in Subsection III(A)(2) (Commencement), *supra*, Petitioner is chargeable with the knowledge of his counsel, and Petitioner makes no assertion that counsel was unaware of the presentence report.

Petitioner argues he mailed a PCR notice on March 20, 2012, which was purportedly lost by the trial court. However, as discussed in Subsection III(A)(4) (Statutory Tolling), *supra*, the trial court rejected this assertion, and Petitioner proffers nothing which would provide the clear and convincing evidence necessary to overcome the presumption of correctness of that finding.

Finally, even if Petitioner could avoid the effect of the statute of limitations, his

1 claims are procedurally defaulted and/or without merit.  Petitioner points to no factual

2 disputes underlying such conclusions, and proffers no evidence which would alter the

3 determinations reached herein.

4 Accordingly, the Motion for Evidentiary Hearing will be denied.

5

6 **IV. CERTIFICATE OF APPEALABILITY**

7 **Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires

8 that in habeas cases the "district court must issue or deny a certificate of appealability

9 when it enters a final order adverse to the applicant."  Such certificates are required in

10 cases concerning detention arising "out of process issued by a State court", or in a

11 proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28

12 U.S.C. § 2253(c)(1).

13 Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges

14 detention pursuant to a State court judgment.  The recommendations if accepted will

15 result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a

16 decision on a certificate of appealability is required.

17 **Applicable Standards** - The standard for issuing a certificate of appealability

18 ("COA") is whether the applicant has "made a substantial showing of the denial of a

19 constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the

20 constitutional claims on the merits, the showing required to satisfy § 2253(c) is

21 straightforward: The petitioner must demonstrate that reasonable jurists would find the

22 district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

23 *McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition

24 on procedural grounds without reaching the prisoner's underlying constitutional claim, a

25 COA should issue when the prisoner shows, at least, that jurists of reason would find it

26 debatable whether the petition states a valid claim of the denial of a constitutional right

27 and that jurists of reason would find it debatable whether the district court was correct in

28 its procedural ruling." *Id.*

38

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on the merits and in part on procedural grounds.  Under the reasoning set forth herein, the constitutional claims are plainly without merit, and the procedural rulings are not debatable by jurists of reason.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Evidentiary Hearing, filed April 30, 2015 (Doc. 10) is **DENIED**.

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed November 3, 2014 (Doc.  1) be **DISMISSED** or, alternatively, **DENIED** on the merits.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*,

328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: October 1, 2015

14-8214r Amend RR 15 09 30 on HC.docx

James F. Metcalf
United States Magistrate Judge